IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| DATASCAPE, LTD., <br> *Plaintiff,* <br><br> v. <br><br> DELL TECHNOLOGIES, INC., <br> DELL, INC., and EMC <br> CORPORATION, <br> *Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 1:19-CV-00605-ADA |

**ORDER DENYING PLAINTIFF DATA SCAPE LIMITED'S MOTION TO DISMISS INEQUITABLE CONDUCT COUNTERCLAIM AND STRIKE INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE**

Came on for consideration this date the Motion of Plaintiff Data Scape Ltd. ("Data Scape") to dismiss the inequitable conduct counterclaim and to strike the inequitable conduct affirmative defense (Dkt. 38), filed on May 13, 2019. Defendants filed a Response (Dkt. 42) on May 24, 2019. Plaintiff filed a Reply (Dkt. 43) on May 31, 2019. After considering the motion, the briefing, the record, and the applicable law, the Court finds that Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Dell") have adequately alleged inequitable conduct as to U.S. Patent No. 9,715,893 ("the '893 patent") and that the instant motion should be **DENIED**.

I.     **Legal Standard**

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must liberally construe the complaint in favor of the plaintiff and must take as true all well-pleaded facts. *Leatherman v. Tarrant Cty. Narcotics*

1

*Intelligence & Coordination Unit,* 507 U.S. 163, 164 (1993); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). The pleading standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly,* 550 U.S. 544, 555–57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear that this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that tenet is inapplicable to legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

This Court certainly appreciates that a claim of inequitable conduct is in essence a claim of fraud on the U.S. Patent and Trademark Office ("PTO") and is therefore subject to the pleading requirements of Rule 9 rather than Rule 8. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326–27 (Fed. Cir. 2009). However, the Court finds that this heightened standard does not alter the outcome of this Motion; the pleading of inequitable conduct is here sufficient.

## II.  Discussion

The Court takes the liberty of quoting the background section from the Defendants' Response in its entirety:

> Data Scape acquired the '893 patent (then a pending application) from the original owner Sony no later than March 2017, along with other patents in the Hirano patent family. [Answer] (ECF 35, ¶ 92.) In the same transaction, Data Scape also acquired the Morohashi patent family, including U.S. Patent No. 7,617,537 ("the '537 patent") and the other patents asserted in this litigation. (*Id.*) The Morohashi patent family including the '537 patent, as well as prior art cited during the prosecution of the '537 patent including U.S. Patent No. 6,577,735 ("Bharat"), specifically teach the same subject matter later claimed in the '893 patent. (*Id.* ¶¶ 94–95.) But Data Scape did not disclose either the '537 patent or Bharat to the Examiner during the prosecution of the '893 patent. (*Id.* ¶¶ 94–95.) Had these references been before the Examiner, the '893 patent would not have issued due to lack of novelty and/or obviousness. (*Id.* ¶ 95.)
>
> These facts are particularly significant given that Data Scape acquired the '893 patent—and the Hirano and Morohashi patent families more broadly—with the intention of asserting and/or licensing the patents to technology companies selling products in the United States. (*Id.* ¶ 96.) Data Scape and its counsel were familiar with the disclosures, claims, prosecution histories, and relevant prior art for both families since at least the diligence in connection with the acquisition. (*Id.* ¶¶ 96–98.) Specifically, at least attorney Terry Kramer—who Data Scape retained to take over and lead prosecution of the '893 patent following the acquisition—was aware of the material prior art, such as the '537 patent and Bharat, as shown by his simultaneous prosecution of applications in the Hirano and Morohashi patent families. (*Id.* ¶ 98.) Mr. Kramer deliberately chose not to disclose the

> '537 patent and Bharat during the prosecution of the '893 patent. (*Id.* ¶¶ 96–98.)

Defs.' Resp. 2 (Dkt. 42). The purpose of quoting this section in its entirety is to demonstrate why the Court is unable to understand why this Motion was ever filed. With just this background introduction alone, Defendants have articulated a sufficient basis to allege inequitable conduct.

Data Scape acquired the '893 patent (then a pending application) from Sony as part of the "Hirano patent family." At the same time and in the same transaction, Data Scape also acquired Sony's "Morohashi patent family." Both patent families describe and claim essentially the same subject matter, relating to music players and music data storage. It would certainly be a logical conclusion that both were acquired for the purposes of assertion in litigation. First, Data Scape is a licensing company. And, in fact, it has since asserted the patents against at least fourteen different defendants. All of this is entirely proper.

But Defendants allege that despite the common ancestry and subject matter—and the strong possibility, if not probability, that Data Scape intended to assert the patents together—Data Scape continued to prosecute the Hirano '893 patent *after* the acquisition *without* citing the Morohashi patents or related applications and prior art. Data Scape will be free at trial to rebut any allegation of inequitable conduct, but it cannot argue at this procedural juncture that its failure to disclose prior art that might be material could not, as a matter of law, constitute inequitable conduct.

Data Scape contends that Defendants have proffered "no evidence whatsoever . . . ." Pl.'s Mot. 1 (Dkt. 38). This Court disagrees. The Court finds that

4

Defendants have sufficiently articulated the *who, when, where, what, how*, and *why* required to state a claim for inequitable conduct. *Exergen*, 575 F.3d at 1326–27.

To paraphrase what Defendants have submitted: Defendants have proffered the *who*: Terry Kramer, who was a prosecuting attorney. The nature of Mr. Kramer's involvement is a question of fact on which Dell is entitled to discovery. Next are the *what/where*. *Exergen* requires the pleadings "to identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Id.* at 1329. Dell's allegations do exactly that: Dell identified independent claim 1 of the '893 patent as exemplary. Answer ¶ 95 (Dkt. 35). Dell specified the relevant limitations at issue in claim 1: "automatically identifying . . . one of the files of source data being absent from the second storage medium; and automatically transferring one of the files of source data to the second storage medium." *Id.* Dell pointed to two references disclosing the specified limitations: the '537 patent (also at issue in this case) and the Bharat reference (cited during the prosecution of the '537 patent). *Id.* And Dell highlighted the relevant teachings in the '537 patent and Bharat, illustrating that these references disclose the same invention claimed in claim 1 of the '893 patent. *Id.*

Next is *when*. Dell adequately alleged that Mr. Kramer took over prosecution of the '893 patent while it was pending, no later than June 20, 2017. *Id.* ¶ 98. Finally, the questions of *how/why*. Under *Exergen*, a defendant must "identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record . . . to explain both 'why' the withheld information is

5

material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." 575 F.3d at 1329–30. Dell has done so. Dell identified the limitations of claim 1 that are found in the withheld '537 patent and Bharat. Answer ¶ 95 (Dkt. 35). Dell also alleged the Morohashi patent family (e.g., the '537 patent) and its corresponding prior art (e.g., Bharat) were not cumulative of the other art already of record in the pending application of the '893 patent. Defendants contend that the Morohashi patent family and/or its corresponding prior art establishes, by itself or in combination with other prior art references, the unpatentability of the '893 patent for lack of novelty and/or obviousness. Furthermore, Defendants submit that had the Morohashi patent family and/or its corresponding prior art been presented to the Patent Office, the '893 patent would not have issued. *Id.* The Court expresses no opinion as to whether Defendants will be able to establish any of this at trial, but at the Motion to Dismiss stage these pleadings certainly require that the Court deny Plaintiff's Motion.

Finally, the Court turns to the issue of scienter. The Court finds that Defendants' allegations sufficiently articulate facts from which a jury could find scienter. Specifically, Dell has alleged that: (1) Plaintiff Data Scape acquired the '893 patent (at the time still a pending application) in the same transaction as the Morohashi patent family, including the '537 patent, *id.* ¶ 92; (2) Data Scape acquired these patents and applications from Sony "with the intention of asserting and/or licensing the patents to technology companies selling products in the United States," *id.* ¶ 96; (3) Data Scape and its prosecution counsel "knew of the Morohashi patent

family and their respective file histories since at least the diligence in connection with the acquisition of the portfolio from Sony," *id.* ¶ 98; and (4) attorney Kramer and his colleagues were simultaneously prosecuting a patent application in the Morohashi patent family, i.e., an application sharing the same specification as the specifically identified '537 patent. *Id.*

The Court rejects Plaintiff's efforts to challenge the arguments that the Defendants have proffered. The Court is certainly aware that the Court should require more at trial to establish scienter than the mere "non-disclosure of a reference solely because that reference was known and material." *1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1372–73 (Fed. Cir. 2012). But this case is at the pleading stage. *See Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 10-CV-00379, 2011 WL 13134896, at *4 (E.D. Tex. Dec. 13, 2011). This Court finds that the Defendants have more than adequately pleaded a claim of inequitable conduct. Plaintiff's Motion to Dismiss and/or to Strike (Dkt. 38) is **DENIED**.

**SIGNED** this the 17th day of June 2019.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE